Hon. Benjamin Settle
Note on Motion Calendar: July 10, 2020

UNITED STATES DISTRICT COURT
**WESTERN DIVISION OF WASHINGTON**

| | | |
|---|---|---|
| CLINT DIDIER, LISA THOMAS, TIM EYMAN, LAWANDA JOY HATCH, DEAN WELLSFRY, PATTY DETRO, JASON BERNICA, S. ROWAN WILSON, BOBBI RANSIER and OTHER WASHINGTONIANS SIMILARLY SITUATED, | ) ) ) ) ) ) ) | **CASE NO.  3:20-cv-5408-BHS** PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ORAL ARGUMENT REQUESTED |
| Plaintiffs, | ) ) ) | |
| JAY INSLEE, in his capacity as Governor of the state of Washington, | ) ) ) | |
| Defendant, | ) ) ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs move this Court for the entry of a preliminary injunction, enjoining Jay Inslee from further violation of the First Amendment, Fifth Amendment, and Fourteenth Amendment to the United States Constitution, and prohibiting him from enforcing his executive Proclamations 20-05; 20-25; 20-25.1; 20-25.2; 20-25.3; and 20-25.4.

**EVIDENCE UPON WHICH MOVANTS RELY**

Plaintiffs rely on the Declarations of Clint Didier; Lisa Thomas; Tim Eyman; LaWanda Joy Hatch; Patty DeTro; Jason Bernica; Bobbi Ransier; Maxford Nelson; Michael Cohen; and Stephen Pidgeon, together with exhibits attached thereto.

Plaintiffs' Motion for Preliminary Injunction
USDC WAWD Didier v. Inslee - 1

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

**TABLE OF CONTENTS**

A. **Introduction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

B. **Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

    a.   Inslee declared an emergency following one
confirmed death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

    b.   Inslee initiated a proclamation which impermissibly
barred expression protected by the First Amendment to
the US Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

    c.   Inslee initiated a proclamation which constitutes a taking
pursuant to the Fifth Amendment to the US Constitution . . . . . . .     6

    d.   Inslee initiates a proclamation which discriminates against
classes of persons in violation of the equal protection clause
of the Fourteenth Amendment to the US Constitution . . . . . . . . . .     17

C. **Argument and Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

    a.   SUBSTANTIVE DUE PROCESS—Facial Challenge. . . . . . . .     8

       i. Inslee's Proclamations Deprive Plaintiffs of Liberty and
Property Interests Protected by the First, Fifth, and
Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

       ii. Inslee's Proclamations violate the First Amendment . . . . . . .     9

       iii. Inslee's Proclamations violate the Fifth Amendment . . . . . .     9

       iv. Inslee's Proclamations violate the Due Process
Protections Secured under the Fourteenth Amendment . . . . . . .     10

       v. Inslee's Proclamations violate the Equal Protections
Secured under the Fourteenth Amendment. . . . . . . . . . . . . . . .     12

    b. PROCEDURAL DUE PROCESS— As Applied Challenge. . . .     14

       i. Inslee's Proclamations as applied Deprive Plaintiffs of
Liberty and Property Interests Protected by the First,
Fifth, and Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . .     14

         (A)  Inslee's Proclamation as applied create Impermissible
Barriers to Plaintiffs' First Amendment Expression. . . . .     14

         (B) Inslee's Proclamation as applied deny Plaintiffs'
Property Rights Secured by the Fifth Amendment. . . . . .     18

         (C) Inslee's Proclamation as applied deny Plaintiff's
Rights to Due Process Secured by the Fourteenth
Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

         (D) Inslee's Proclamation as applied deny Plaintiffs'
Rights to Equal Protection Secured by the
Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

      **D. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     24

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

## A. INTRODUCTION

Based on now discredited models that claimed a pandemic was arising in the United States, and for other reasons, on February 29, 2020, Inslee proclaimed that "a State of Emergency exists in all counties of the state of Washington," and directed "the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented."  See Declaration of Stephen Pidgeon, Exhibit 1, Inslee Proclamation 20-05, page 2 (SP Dec, Ex. 1, pg. 2).

On March 23, Inslee proclaimed that there were "at least 2,221 cases of COVID-19 in Washington State and, tragically, 110 deaths of Washingtonians associated with COVID-19" and "models predict that many hospitals in Washington State will reach capacity or become overwhelmed with COVID-19 patients within the next several weeks unless we substantially slow down the spread of COVID-19 throughout the state."  Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 1). No such overwhelming circumstances ever occurred in Washington. Declaration of Michael Cohen, MD.

On this same day, Inslee then prohibited "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business," (the "lockdown") within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 1). Also see, Essential Business Roster (SP Dec, Ex. 3).

Inslee thereafter continued his "lockdown" through a series of Proclamations, 20-25.1, 20-25.2, 20-25.3, and most recently, 20-25.4 ("Safe Start Washington). Until Inslee announced the Phase approach in 20-25.4, the original lockdown order has remained in full force and effect in multiple counties in Washington, including Franklin and Benton Counties where most plaintiffs live.

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

## B. FACTUAL BACKGROUND

### a. Inslee declared an emergency following one confirmed death

On January 21, 2020, the Washington State Department of Health confirmed the first case of the novel coronavirus (COVID-19) in the United States in Snohomish County, Washington, and local health departments and the Washington State Department of Health have since that time worked to identify, contact, and test others in Washington State potentially exposed to COVID-19 in coordination with the United States Centers for Disease Control and Prevention (CDC). Inslee Proclamation 20-05 (SP Dec, Ex. 1, pg. 1).

Inslee proclaimed that "COVID-19, a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person." Inslee Proclamation 20-05 (SP Dec, Ex. 1, pg. 1).

Inslee proclaimed that the CDC had identified the potential public health threat posed by COVID-19 both globally and in the United States as "high", and advised that person-to-person spread of COVID-19 will continue to occur globally, including within the United States. Inslee Proclamation 20-05 (SP Dec, Ex. 1, pg. 1).

On January 31, 2020, the United States Department of Health and Human Services Secretary Alex Azar declared a public health emergency for COVID-19, beginning on January 27, 2020. Inslee Proclamation 20-05 (SP Dec, Ex.1, pg.1).

At that time, the CDC indicated there were 85,688 confirmed cases of COVID-19 worldwide with 66 of those cases in the United States, and the Washington State Department of Health confirmed localized person-to-person spread of COVID-19 in Washington State, increasing the risk

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

of exposure and infection to Washington State's general public and, in Inslee's view created an extreme public health risk that may spread quickly. Inslee Proclamation 20-05 (SP Dec, Ex.1, pg.1).

The first official announcement of a death from COVID-19 in the United States happened on February 29, when a man in his late 50s with pre-existing chronic illness died at Evergreen Health's hospital in Kirkland. He was not associated with the Life Care Center and although patients from the center were also in the hospital, it was not believed that any patients contracted the virus at the hospital. Officials said there was no evidence he contracted the virus through travel, and they suspected community spread of the disease in King County. Acevedo, Nicole; Burke, Minyvonne (March 1, 2020). *Washington state man becomes first U.S. death from coronavirus.* NBC News.

Inslee then declared there was "an extreme public health risk that may spread quickly". Inslee Proclamation 20-05 (SP Dec, Ex.1, pg.2), and "the effects of its extreme risk of person-to-person transmission throughout the United States and Washington State significantly impacts the life and health of our people, as well as the economy of Washington State, and is a public disaster that affects life, health, property or the public peace." Inslee Proclamation 20-05, (SP Dec, Ex.1, pg.2).

On February 29, 2020, Inslee then proclaimed that "a State of Emergency exists in all counties of the state of Washington," and directed "the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented." Inslee Proclamation 20-05, (SP Dec, Ex.1, pg.2).

On the strength of this reported death, Inslee also ordered "into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of the Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak." Inslee Proclamation 20-05, (SP Dec, Ex.1, pg.2).

Plaintiffs' Motion for Preliminary Injunction
USDC WAWD Didier v. Inslee - 5

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

Inslee also directed the Washington State Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments. Inslee Proclamation 20-05 (SP Dec, Ex.1, pg.2).

### b. Inslee initiated a proclamation which impermissibly barred expression protected by the First Amendment to the US Constitution

On March 23, Inslee prohibited "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business," within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex.2, pg.2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex.3).

This lockdown order directly prohibited the free assembly rights of Plaintiffs Didier, Eyman, and Thomas, all whose political activities were curtailed by this order, including political fund-raising meetings, gatherings of party members, public appearances, and planned functions.  See Declarations of Didier, Eyman, and Thomas.

### c. Inslee initiated a proclamation which constitutes a taking pursuant to the Fifth Amendment to the US Constitution.

On March 23, Inslee prohibited "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business," within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex. 3).

Inslee's lockdown order immediately closed the businesses of plaintiffs Hatch (Wedding Planner), Wellsfry (Shakey's Pizza), Detro (Hair Salon) and Bernica (Auto Dealership), and

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

deprived them of all uses of their business licenses, their businesses, their business premises, their earnings, and the commercial maintenance and development of their businesses. The Inslee order provided no prior notice, no opportunity for a hearing, and no other due process before arresting these businesses, and the order improperly distinguished between "essential businesses" and "non-essential businesses". Such a comprehensive lockdown constituted a taking of the businesses of Plaintiffs. See Declarations of Hatch, Wellsfry, Detro, and Bernica.

### d. Inslee initiates a proclamation which discriminates against classes of persons in violation of the equal protection clause of the Fourteenth Amendment to the US Constitution.

On March 23, Inslee prohibited "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business," within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex. 3).

Inslee's order thereafter caused the termination of tens of thousands of Washington employees who were employed by businesses deemed "non-essential." Distinguishing between "essential" and "non-essential" businesses in Washington is unlawful discrimination barred by the Equal Protection clause of the Fourteenth Amendment and has worked substantial harm against plaintiffs Ransier. See Declarations of Ransier.

Ransier has a protected liberty interest in their right to pursue any "lawful calling, business, or profession [they] may choose" free from arbitrary government interference and deprivation. *Lowe v. S.E.C.,* 472 U.S. 181, 228 (1985) (*citing Dent v. West Virginia,* 129 U.S. 114, 121-122 (1889)).

The Inslee Proclamations instructed all "non-essential" businesses in Washington to shutdown indefinitely, without providing a mechanism to alleviate the economic harm to Ransier who were displaced as a result. See Declarations of Ransier.

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

## C. ARGUMENT AND AUTHORITIES

In determining whether to grant a preliminary injunction, courts must consider four factors: "(1) that [Plaintiff] is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of the preliminary injunction (3) that the balance of equities tips in his favor, and (4) that a preliminary injunction is in the public interest." *Beaty v. Brewer,* 649 F.3d 1071, 1072 (9th Cir. 2011), (citing *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008)). For the reasons explained below, Plaintiffs satisfy each of these requirements and is accordingly entitled to the requested relief.

### a.   SUBSTANTIVE DUE PROCESS—Facial Challenge

#### i. Inslee's Proclamations Deprive Plaintiffs of Liberty and Property Interests Protected by the First, Fifth, and Fourteenth Amendment

"'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" *Salerno,* 481 U.S. at 746 (*quoting Rochin*, 342 U.S. at 172, and *Palko*, 302 U.S. at 325–326).

"[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998). (quotations omitted).

The Proclamations of Jay Inslee, 20-05, 20-25, 20-25.1, 20-25.2, 20-25.3, and 20-25.4 together with their explanatory proclamations including listing essential and non-essential businesses and developing a phased-in restoration of constitutional rights wrongfully suspended violate the First, Fifth and Fourteenth Amendments on their face.

#### ii. Inslee's Proclamations violate the First Amendment.

Plaintiffs' Motion for Preliminary Injunction
USDC WAWD Didier v. Inslee - 8

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

The Free Assembly clause of the First Amendment provides that "Congress shall make no law respecting . . . or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

The First Amendment has been made applicable against the states by means of the Fourteenth Amendment which provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Inslee's Proclamation 20-25 prohibited in applicable part "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants," Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2)

Plaintiffs have a protected liberty interest in their right to live without arbitrary governmental interference. *NAACP v. Alabama ex rel. Patterson,* 357 US 449, 460 (1958); *citing Gitlow v. New York,* 268 U. S. 652, 666; *Palko v. Connecticut,* 302 U. S. 319, 324; *Cantwell v. Connecticut,* 310 U. S. 296, 303; *Staub v. City of Baxley,* 355 U. S. 313, 321; *De Jonge v. Oregon,* 299 US 353, 364 (1937); *citing Gitlow v. New York, supra,* p. 666; *Near v. Minnesota,* 283 U.S. 697, 707; *Grosjean v. American Press Co.,* 297 U.S. 233, 243, 244.

Inslee's Proclamation violates Plaintiffs First Amendment rights because it prohibits activity expressly protected under the Amendment, and is therefore facially invalid under the First Amendment to the Constitution of the United States.

### iii. Inslee's Proclamations violate the Fifth Amendment.

Plaintiffs' Motion for Preliminary Injunction
USDC WAWD Didier v. Inslee - 9

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

The Takings clause of the Fifth Amendment provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Fifth Amendment has been made applicable against the states by means of the Fourteenth Amendment which provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Inslee's Proclamation 20-25 together with his "essential business" list prohibited in applicable part "all non-essential businesses in Washington State from conducting business." Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex. 3).

Plaintiffs have a protected fundamental property right to use and enjoy land in which they hold a recognized interest (such as fee simple, or as a leasehold).   *Horne v. Dep't of Agriculture*, 576 U.S. 350, 135 S. Ct. at 2426; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432-33 (1982); *Vitek v. Jones,* 445 U.S. 480, 495-96 (1980); *Tillman v. Lebanon County Correctional Facility,* 221 F.3d 410, 421 (3rd Cir. 2000).

Inslee's Proclamation violates Plaintiffs' Fifth Amendment rights because it takes the property interests of plaintiffs without notice, without hearing, and without just compensation, and is facially invalid under the Fifth Amendment to the Constitution of the United States.

### iv. Inslee's Proclamations violate the Due Process Protections Secured under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Inslee prohibited "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business," within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex. 3).

The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" *County. Of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)).

"[T]he fault [may] lie in a denial of fundamental procedural fairness … or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *Id.* at 845-846 (citations omitted).

Inslee's Proclamation 20-25, et seq. are arbitrary, capricious, irrational and constitute abusive conduct which unlawfully interferes with Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution, and on their face fail to provide for any notice, any hearing, any right of cross examination all of which violate the Due Process requirements of the Fourteenth Amendment.

The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. *Goss v. Lopez,* 419 US 565, 573 (1975), citing *Board of Regents v. Roth,* 408 U. S. 564, 577 (1972). "The fundamental requisite of due process of law is the opportunity to be heard," *Goss v. Lopez, op, cit.,* at 579, *citing Grannis v. Ordean,* 234 U. S. 385, 394 (1914), a right that "has little reality or worth unless one is informed that the matter is pending

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

and can choose for himself whether to . . . contest." *Mullane v. Central Hanover Trust Co.,* 339 US 306, 314; *Armstrong v. Manzo,* 380 U. S. 545, 550 (1965); *Anti-Fascist Committee v. McGrath,* 341 U. S. 123, 168-169 (1951) (Frankfurter, J., concurring). "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Baldwin v. Hale,* 1 Wall. 223, 233 (1864).

Inslee's Proclamation violates Plaintiffs' Fourteenth Amendment rights to due process because it affords no notice and no hearing, and is facially invalid under the Fourteenth Amendment to the Constitution of the United States.

Inslee's behavior "'shocks the conscience' and violates the 'decencies of civilized conduct.'" *County of Sacramento v. Lewis,* 523 U.S. 833, 846-47 (1998). "[I]t d[oes] not comport with traditional ideas of fair play and decency" and therefore violates substantive due process. *Breithaupt v. Abram,* 352 U.S. 432, 435 (1957).

### v. Inslee's Proclamations violate the Equal Protections Secured under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Inslee prohibited "all non-essential businesses in Washington State from conducting business," within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex. 3).

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to *any person* within its jurisdiction the equal protection of the laws.' (Italics in original.) As this Court has noted in the past, the "rights created by the first section of the Fourteenth Amendment

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

are, by its terms, guaranteed to the individual. The rights established are personal rights.'" *Richmond v. J.A. Croson Co.,* 488 US 469, 493 (1989); citing *Shelly v Kraemer,* 334 U.S. 1, 22 (1948).

"[T]he standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification. *Wygant v. Jackson Board of Education,* 476 U. S. 267, 279-80, 285-86 (1986). See also *San Antonio Independent School Dist. v. Rodriguez,* 411 U. S. 1, 105 (1973).

"The guarantees of the Fourteenth Amendment extend to all persons. Its language is explicit: 'No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.' It is settled beyond question that the 'rights created by the first section of the Fourteenth Amendment are, by its terms, guaranteed to the individual. The rights established are personal rights,' *Shelley v. Kraemer, supra,* at 22. Accord, *Missouri ex rel. Gaines v. Canada,* supra, at 351; *McCabe v. Atchison, T. & S. F. R. Co.,* 235 U. S. 151, 161-162 (1914). The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal. *University of California Regents v. Bakke,* 438 US 265, 289 (1978).

"The Constitution guarantees that right [of equal protection] to every person regardless of his background." *Bakke,* at 299, *Shelley v. Kraemer,* 334 U. S., at 22; *Missouri ex rel. Gaines v. Canada,* 305 U. S., at 351.

Inslee's Proclamation violates Plaintiffs' Fourteenth Amendment rights to equal protection because it discriminates between "essential" businesses and "non-essential" businesses, and does not reflect legislation or a determination by lawful means, but was determined by the arbitrary and capricious decision of Inslee, and is facially invalid under the Fourteenth Amendment to the Constitution of the United States.

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

Inslee's behavior "'shocks the conscience' and violates the 'decencies of civilized conduct.'" *Lewis, op. cit.,* 523 U.S. 833, 846–47. "[I]t d[oes] not comport with traditional ideas of fair play and decency" and therefore violates substantive due process. *Breithaupt v. Abram,* 352 U.S. 432, 435 (1957).

### b. PROCEDURAL DUE PROCESS— As Applied Challenge

### i. Inslee's Proclamations as applied deprive Plaintiffs' Liberty and Property Interests in Violation of the First, Fifth, and Fourteenth Amendment

Jay Inslee's Proclamations have in fact deprived plaintiffs of liberty and property interests protected by the First, Fifth and Fourteenth Amendments.

### (A) Inslee's Proclamation as applied creates Impermissible Barriers to Plaintiffs' First Amendment Expression Rights.

The Free Assembly clause of the First Amendment provides that "Congress shall make no law respecting . . . or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

The First Amendment has been made applicable against the states by means of the Fourteenth Amendment which provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The First Amendment has long asserted that "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. *NAACP v. Alabama ex rel. Patterson,* 357 US 449, 460 (1958); *citing Gitlow v. New York,* 268 U. S.

Plaintiffs' Motion for Preliminary Injunction
USDC WAWD Didier v. Inslee - 14

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

652, 666; *Palko v. Connecticut,* 302 U. S. 319, 324; *Cantwell v. Connecticut,* 310 U. S. 296, 303; *Staub v. City of Baxley,* 355 U. S. 313, 321.

The First Amendment has long asserted that "[f]reedom of speech and of the press are fundamental rights which are safeguarded by the due process clause of the Fourteenth Amendment of the Federal Constitution." *De Jonge v. Oregon,* 299 US 353, 364 (1937); *citing Gitlow v. New York, supra,* p. 666; *Near v. Minnesota,* 283 U.S. 697, 707; *Grosjean v. American Press Co.,* 297 U.S. 233, 243, 244. The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental. As the Court said in *United States v. Cruikshank,* 92 U.S. 542, 552:

> The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances. The First Amendment of the Federal Constitution expressly guarantees that right against abridgment by Congress. But explicit mention there does not argue exclusion elsewhere. For the right is one that cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions, — principles which the Fourteenth Amendment embodies in the general terms of its due process clause. *Hebert v. Louisiana,* 272 U.S. 312, 316; *Powell v. Alabama,* 287 U.S. 45, 67; *Grosjean v. American Press Co., supra.*

"The Due Process Clause of the Fifth Amendment provides that 'No person shall . . . be deprived of life, liberty, or property, without due process of law . . .' This Court has held that the Due Process Clause protects individuals against two types of government action. So-called 'substantive due process' prevents the government from engaging in conduct that "shocks the conscience,' *Rochin v. California,* 342 U. S. 165, 172 (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko v. Connecticut,* 302 U. S. 319, 325-326 (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge,* 424 U. S. 319, 335 (1976). This

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

requirement has traditionally been referred to as 'procedural' due process." *United States v. Salerno,* 481 US 739, 746 (1987).

Plaintiffs assert, as to the denial of the First Amendment rights of free assembly and the right to petition the government for a redress of grievances, that the Proclamation of Inslee set forth in 20-25, and reiterated in 20-25.1, 20-25.2, 20-25.3, and 20-25.4 are facially invalid, in that under no set of circumstances exists the Proclamation would be valid under the First Amendment.

As the Supreme Court articulated in *Roberts v. United States Jaycees,* 468 US 609, 618-19 (1984): "[T]he Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. E. g., *Pierce v. Society of Sisters,* 268 U. S. 510, 534-535 (1925); *Meyer v. Nebraska,* 262 U. S. 390, 399 (1923). Without precisely identifying every consideration that may underlie this type of constitutional protection, we have noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State. See, e. g., *Zablocki v. Redhail,* 434 U. S. 374, 383-386 (1978); *Moore v. East Cleveland,* 431 U. S. 494, 503-504 (1977) (plurality opinion); *Wisconsin v. Yoder,* 406 U. S. 205, 232 (1972); *Griswold v. Connecticut,* 381 U. S. 479, 482-485 (1965); *Pierce v. Society of Sisters, supra,* at 535. *See also Gilmore v. City of Montgomery,* 417 U. S. 556, 575 (1974); *NAACP v. Alabama ex rel. Patterson,* 357 U. S. 449, 460-462 (1958); *Poe v. Ullman,* 367 U. S. 497, 542-545 (1961) (Harlan, J., dissenting). Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

any concept of liberty. See, e. g., *Quilloin v. Walcott,* 434 U. S. 246, 255 (1978); *Smith v. Organization of Foster Families,* 431 U. S. 816, 844 (1977); *Carey v. Population Services International,* 431 U. S. 678, 684-686 (1977); *Cleveland Board of Education v. LaFleur,* 414 U. S. 632, 639-640 (1974); *Stanley v. Illinois,* 405 U. S. 645, 651-652 (1972); *Stanley v. Georgia,* 394 U. S. 557, 564 (1969); *Olmstead v. United States,* 277 U. S. 438, 478 (1928) (Brandeis, J., dissenting)."

"An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed. See, e. g., *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley,* 454 U. S. 290, 294 (1981). According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority. See, e. g., *Gilmore v. City of Montgomery,* 417 U. S., at 575; *Griswold v. Connecticut,* 381 U. S., at 482-485; *NAACP v. Button,* 371 U. S. 415, 431 (1963); *NAACP v. Alabama ex rel. Patterson,* 357 U. S., at 462. Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. See, e. g., *NAACP v. Claiborne Hardware Co.,* 458 U. S. 886, 907-909, 932-933 (1982); *Larson v. Valente,* 456 U. S. 228, 244-246 (1982); *In re Primus,* 436 U. S. 412, 426 (1978); *Abood v. Detroit Board of Education,* 431 U. S. 209, 231 (1977).

Inslee's proclamation prohibited the formation and preservation of highly personal relationships, the culture and traditions of the Nation in cultivating and transmitting shared ideals and beliefs; restricted and prohibited Plaintiffs' freedom to speak, to worship, and to petition the government for the redress of grievances and to engage in group effort toward those ends. In every

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

possible circumstance, the proclamation prohibiting "all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business" egregiously breached the rights of Plaintiffs protected by the First Amendment to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. See Declarations of Didier, Eyman, and Thomas.

### (B) Inslee's Proclamation as applied deny
### Plaintiffs' Property Rights Secured by the Fifth Amendment.

Plaintiffs Hatch, Wellsfry, Detro, and Bernica have been deprived of their property interests in being unable to pursue their businesses, in violation of the Fifth Amendment.  See Declarations of Hatch, Wellsfry, Detro, and Bernica. The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. AMEND. V.

The Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315 (1987) (emphasis in original)).

The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).

Inslee's Proclamations adversely impacted Plaintiffs' use of their Tangible Property and Physical Locations to such an extent that, from their effective date until Plaintiffs' rights are fully restored, the Orders entirely diminished the economically beneficial use of those Properties. The

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

Proclamations prohibit all economically beneficial and profitable uses of Plaintiffs' Tangible Property and Physical Location, save bare ownership, and the entire bundle of property rights were extinguished. See Declarations of Hatch, Wellsfry, Detro, and Bernica.

The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron U. S. A. Inc.,* 544 U.S. 528, 537 (2005).

 "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415–16 (1922). Inslee's Inslee Proclamations "go too far" and must "be recognized as a taking." *See id.* Otherwise, without just compensation guaranteed by the Takings Clause, Plaintiffs will be privately saddled with the cost of paying for government action undertaken for the common good.

Plaintiffs have suffered a complete loss of "all economically beneficial uses" of their Property while the Inslee Proclamations remain in effect. This complete loss constitutes a categorical taking, whether it be Plaintiffs' inability to operate their businesses at their Physical Locations or their inability to exercise any of their other property rights regarding their Tangible Property. See *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1019 (1992).

Plaintiffs have "been called upon to sacrifice all economically beneficial uses [for their Properties] in the name of the common good, that is, to leave [their] propert[ies] economically idle, [they] h[ave] suffered a taking." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019 (1992).

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

In the alternative, under the framework articulated by the Supreme Court in *Penn Central*, the Inslee Proclamations constitute a taking based upon "the magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[] with legitimate property interests." *Lingle*, *op. cit.,* at 540. The Supreme Court's analysis in *Penn Central* sets forth the framework for assessing whether government action is considered a regulatory taking, identifying "several factors that have particular significance." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978). On the other hand, if the regulation "fall[s] short of eliminating all economically beneficial use, a taking nonetheless may have occurred," *Palazzolo [v. Rhode Island],* 533 U.S. [606] at 617, 121 S.Ct. 2448[, 150 L.Ed.2d 592 (2001)], and the court looks to three factors to guide its inquiry: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action," *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing of all the relevant circumstances." *Palazzolo*, 533 U.S. at 634, 636, 121 S.Ct. 2448 (O'Connor, J., concurring); see also *Tahoe–Sierra,* 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"), *Yee v. City of Escondido,* 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory takings claims "entail complex factual assessments"). *Lost Tree Vill. Corp. v. United States,* 115 Fed. Cl. 219, 228 (2014) (emphasis added).

With no effective notice, Governor Inslee ordered Plaintiffs to cease operations at their businesses, giving plaintiffs not time to reconfigure an ordinary small business concern to allow for productive use of its assets when denied access to its Physical Location. Plaintiffs have ceased their operations since the Governor's Proclamations classified them as a "non-essential" businesses.

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

The Inslee's Proclamations "will remain in effect until further notice," and, as a result, Plaintiffs are deprived of the value of their Tangible Property and Physical Locations while the Orders are in effect. The Physical Locations of Plaintiffs are not usable for any purpose, nor can these affected Physical Locations currently be bought, sold or leased, nor can Plaintiffs' Tangible Property be used to generate income while the Proclamations are in effect.

The Inslee Proclamations have either entirely drained Plaintiffs' Property of all economic value during their pendency, or have nearly done so; in either event, the diminution of value and government interference caused by these Proclamations are an unconstitutional taking without just compensation.

### (C) Inslee's Proclamation as applied deny Plaintiffs' Rights to Due Process Secured by the Fourteenth Amendment.

Inslee proclaimed his lockdown order on March 23, 2020, with no prior notice to any of the non-essential businesses identified in Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order") and his Essential Business Roster, (SP Dec, Ex. 3). In this Proclamation, Inslee prohibited "all non-essential businesses in Washington State from conducting business," within the limitations provided therein.

The Fourteenth Amendment provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Inslee's Proclamations 20-25, et seq. are arbitrary, capricious, irrational and constitute abusive conduct which unlawfully interferes with Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment, and on their face fail to provide for any notice, or hearing, in violation the Due Process requirements of the Fourteenth Amendment.

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. *Goss v. Lopez,* 419 US 565, 573 (1975), citing *Board of Regents v. Roth,* 408 U. S. 564, 577 (1972). "The fundamental requisite of due process of law is the *opportunity to be heard,*" [italics added], *Goss v. Lopez, op, cit.,* at 579, citing *Grannis v. Ordean,* 234 U. S. 385, 394 (1914), a right that "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest." *Mullane v. Central Hanover Trust Co.,* 339 US 306, 314; *Armstrong v. Manzo,* 380 U. S. 545, 550 (1965); *Anti-Fascist Committee v. McGrath,* 341 U. S. 123, 168-169 (1951) (Frankfurter, J., concurring). "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right *they must first be notified*." [italics added] *Baldwin v. Hale,* 1 Wall. 223, 233 (1864).

Plaintiffs never received any prior notice that their businesses were going to be summarily closed, nor were they ever given an opportunity to be heard on the issue. See Declarations of Hatch, Wellsfry, Detro, and Bernica.

### (D) Inslee's Proclamation as applied deny Plaintiffs' Rights to Equal Protection Secured by the Fourteenth Amendment.

The Fourteenth Amendment provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Inslee prohibited "all non-essential businesses in Washington State from conducting business," within the limitations provided therein. Inslee Proclamation 20-25 (SP Dec, Ex. 2, pg. 2) (the "lockdown order"). Also see, Essential Business Roster, (SP Dec, Ex.3).

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.' (Italics in original.) As

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

this Court has noted in the past, the "rights created by the first section of the Fourteenth Amendment are, by its terms, guaranteed to the individual. The rights established are personal rights.'" *Richmond v. J.A. Croson Co.,* 488 US 469, 493 (1989); citing *Shelly v Kraemer,* 334 U.S. 1, 22 (1948).

"[T]he standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification. *Wygant v. Jackson Board of Education,* 476 U. S. 267, 279-80, 285-86 (1986). See also *San Antonio Independent School Dist. v. Rodriguez,* 411 U. S. 1, 105 (1973).

"The guarantees of the Fourteenth Amendment extend to all persons. Its language is explicit: 'No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.' It is settled beyond question that the 'rights created by the first section of the Fourteenth Amendment are, by its terms, guaranteed to the individual. The rights established are personal rights,' *Shelley v. Kraemer, supra,* at 22. Accord, *Missouri ex rel. Gaines v. Canada, supra,* at 351; *McCabe v. Atchison, T. & S. F. R. Co.,* 235 U. S. 151, 161-162 (1914). The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal. *University of California Regents v. Bakke,* 438 US 265, 289 (1978).

"The Constitution guarantees that right [of equal protection] to every person regardless of his background." *Bakke*, at 299, *Shelley v. Kraemer,* 334 U. S., at 22; *Missouri ex rel. Gaines v. Canada,* 305 U. S., at 351. Inslee's Proclamation violates Plaintiffs' Fourteenth Amendment rights to equal protection because, as applied, it discriminates between "essential" businesses and "non-essential" businesses, and does not reflect legislation or a determination by lawful means, but was determined by the arbitrary and capricious decision of Inslee.

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

Inslee's decision has allowed Marijuana Dispensaries to remain open while closing Wedding Planners like the business of Wanda Hatch.  Inslee's decision allows large market stores such as Costco to serve food and distribute gasoline and regularly used and uncleaned pump handles, but closes businesses such as Shakey's Pizza owned by Wellsfry. Inslee's decision allows for Marijuana Dispensaries to remain open, while closing hair salons like the business of Detro. Inslee's decision allows big store retailers like Costco, Walmart, Lowes and Home Depot to remain open, while closing auto dealerships like the auto dealership owned by Bernica. Inslee's Proclamations are not simply unjust, arbitrary, and capricious – they are discriminatory and violate the Equal Protection Clause of the Fourteenth Amendment as applied to plaintiffs here.

## CONCLUSION

Plaintiffs request this Court enter a Preliminary Injunction against Defendant Inslee, prohibiting him from enforcing Proclamations 20-05; 20-25; 20-25.1; 20-25.2; 20-25.3; and 20.25.4.

Respectfully submitted this 11 day of June 2020.

//*Stephen Pidgeon*
Stephen Pidgeon, WSBA #25265
Attorney at Law, P.S.
1523 132nd Street SE
Suite C-350
Everett, Washington 98208
(425)299-9012
Attorney for Plaintiffs

Plaintiffs' Motion for Preliminary Injunction
USDC WAWD Didier v. Inslee - 24

STEPHEN PIDGEON
*Attorney at Law, P.S.*
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513

## CERTIFICATE OF SERVICE

The undersigned now certifies that a true and correct copy of the foregoing was served upon

the following attorneys of record by means of the ECF system pursuant to Fed.R.Civ.P. (5(b)(2)(E),

as provided by the United States District Court, Western Division of Washington, commensurate

with its filing on this 11th day of May, 2020.

ZACHARY PEKELIS JONES, WSBA No. 44557
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 474-7744
zach.jones@atg.wa.gov

JEFFREY T. EVEN, WSBA No. 20367
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(360) 586-0728
jeffrey.even@atg.wa.gov

PAUL M. WEIDEMAN, WSBA No. 42254
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(360) 753-7085
paul.weideman@atg.wa.gov

BRENDAN SELBY, WSBA No. 55325
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 254-4270
brendan.selby@atg.wa.gov

EMMA S. GRUNBERG, WSBA No. 54659
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3222
emma.grunberg@atg.wa.gov

Attorneys for Defendant Jay Inslee

//Stephen Pidgeon
Stephen Pidgeon, WSBA #25265

STEPHEN PIDGEON
Attorney at Law, P.S.
1523 132nd Street SE, Suite C350
Everett, Washington 98208
Stephen.pidgeon@comcast.net
425-347-7513